WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roger Burke Anderson, | No. CV 13-336-TUC-CRP |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c). Pending before the Court are Plaintiff's Opening Brief (Doc. 26) ("Plaintiff's Brief"), Defendant's Opposition to Plaintiff's Opening Brief (Doc. 30) ("Defendant's Brief"), and Plaintiff's Reply (Doc. 31). For the following reasons, the Court remands this matter for further proceedings.

**BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on June 10, 2010, with a protective filing date of June 8, 2010, alleging disability as of August 17, 2007,[1] due to

---

[1] Plaintiff later amended his disability onset date to March 1, 2008. (Plaintiff's Brief, p. 3 (citing AR. 224)).

severe cervical stenosis, severe lumbar stenosis, degenerative disc disease, hearing loss, cardiovascular disease and depression. (Administrative Record ("AR.") 127-128, 147, 151). Plaintiff was 56 years of age on the August 17, 2007 alleged disability onset date, 57 years of age on the March 1, 2008 alleged onset date as amended by Plaintiff before the Appeals Council, and 61 years of age as of the date of the Commissioner's final decision. (AR. 43, 127, 224). Plaintiff has a college education with a degree in dentistry, and past work experience for nearly thirty-one years as a dentist. (AR. 152, 168, 199).

Plaintiff's application was denied initially and on reconsideration. (AR. 98, 104). Thereafter, Plaintiff appeared without a representative and testified before the ALJ at an administrative hearing. (AR. 48-67). In addition, Plaintiff's wife and Plaintiff's friend testified as lay witnesses. (AR. at 62-66). On November 11, 2011 the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act. (AR. 29-43).

Plaintiff then requested Appeals Council Review, amended his disability onset date to March 1, 2008, and submitted additional evidence which the Appeals Council made "part of the record" when making its determination to deny his request for review.[2] (AR. 1-6; *see also* Plaintiff's Brief, p. 3 (While before the Appeals Council, "Anderson also amended his onset date to March 1, 2008.")). Upon the Appeals Council's denial of Plaintiff's request for review, the ALJ's decision became the final decision of the Commissioner.

Plaintiff then initiated the instant action, arguing that substantial evidence did not support: (1) the ALJ's evaluation of the opinion of treating physiatrist Dr. Ostrowski; (2) the ALJ's as-generally performed step-four decision; (3) the ALJ's evaluation of Plaintiff's

---

[2]Defendant does not argue that the Court should not consider Plaintiff's additional evidence submitted to the Appeals Council. Moreover, when the Appeals Council accepts and considers new evidence in deciding a request for review, that evidence becomes part of the administrative record which the district court must consider when reviewing the Commissioner's final decision for substantial evidence. *See Brewes v. Commissioner of Social Security Administration,* 682 F.3d 1157, 1163 (9th Cir. 2012); *Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir 1993). Therefore, the Court considers Plaintiff's additional evidence accepted by the Appeals Council.

1 activities of daily living; and (4) the ALJ's evaluation of lay-witness statements. (Plaintiff's
2 Opening Brief.)

3 **STANDARD**

4 The Court has the "power to enter, upon the pleadings and transcript of the record, a
5 judgment affirming, modifying, or reversing the decision of the Commissioner of Social
6 Security, with or without remanding the cause for a rehearing."  42 U.S.C. §405(g).  The
7 factual findings of the Commissioner shall be conclusive so long as they are based upon
8 substantial evidence and there is no legal error.  42 U.S.C. § 405(g); *Tommasetti v. Astrue*,
9 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial
10 of disability insurance benefits when the ALJ's findings are based on legal error or are not
11 supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094,
12 1097 (9th Cir. 1999) (citations omitted).

13 Substantial evidence is "'more than a mere scintilla[,] but not necessarily a
14 preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871,
15 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098.  Further, substantial evidence is
16 "such relevant evidence as a reasonable mind might accept as adequate to support a
17 conclusion."  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007)(citation omitted). Where
18 "the evidence can support either outcome, the court may not substitute its judgment for that
19 of the ALJ." *Tackett*, 180 F.3d at 1098 (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th
20 Cir. 1992)).  Moreover, the Commissioner, not the court, is charged with the duty to weigh
21 the evidence, resolve material conflicts in the evidence and determine the case accordingly.
22 *Matney,* 981 F.2d at 1019. However, the Commissioner's decision "'cannot be affirmed
23 simply by isolating a specific quantum of supporting evidence.'"  *Tackett,* 180 F.3d at 1098
24 (*quoting Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). Rather, the Court must
25 "'consider the record as a whole, weighing both evidence that supports and evidence that
26 detracts from the [Commissioner's] conclusion.'" *Id.* (*quoting Penny v. Sullivan*, 2 F.3d 953,
27 956 (9th Cir. 1993)).

28

## DISCUSSION

SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step sequential process. 20 C.F.R. § 404.1520. To establish disability, the claimant must show he has not worked since the alleged disability onset date (step one), he has a severe impairment (step two), and his impairment meets or equals a listed impairment (step three) or his residual functional capacity ("RFC")[3] precludes him from performing past work (step four). Where the claimant meets his burden, the Commissioner must show that the claimant is able to perform other work, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience (step five).

## PERTINENT FINDINGS BY THE ALJ

The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease and spinal stenosis. (AR. 34). The ALJ found that Plaintiff's impairments did not meet or equal any of the impairments found in the Listings, sections 1.04, 2.10, and 12.04. (AR. 35). The ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR [§] 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; the claimant can stand and/or walk 6 hours in an 8-hour workday, with normal breaks; the claimant can sit 6 hours in an 8-hour workday, with normal breaks; and the claimant can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffold; the claimant can occasionally stoop, kneel, crouch, and crawl; the claimant is limited to frequent reaching overhead bilaterally; and the claimant must avoid concentrated exposure to extreme cold, noise, vibration, and hazards.

(AR. 36).

The ALJ did not take testimony from a vocational expert ("VE"). Instead, the ALJ relied upon *The Dictionary of Occupational Titles* to find that Plaintiff is capable of performing his past relevant work as a dentist as that work is generally performed. (AR. 43).

---

[3] RFC is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545.

- 4 -

1  Consequently, the ALJ concluded that Plaintiff was not under a disability from August 17,
2  2007 through the date of the ALJ's decision. (AR. 43).

**THE ALJ'S REJECTION OF TREATING DR. OSTROWSKI'S  FEBRUARY 9, 2009 AND SEPTEMBER 17, 2010 OPINIONS**

In reaching her decision, the ALJ gave "little weight" to letters dated February 9, 2009 and September 17, 2010, from Plaintiff's treating physiatrist Jon Ostrowski, M.D., who opined that Plaintiff could not continue working as a dentist due to degenerative arthritis, degenerative disc disease, and chronic neck problems. (AR. 40). Instead, the ALJ gave great weight to the findings of non-examining, state agency Doctors Kurtin and Falhberg, who found that Plaintiff was not precluded from performing a significant range of light work. (AR. 41).

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination, credibility finding, or step-four decision because the ALJ erroneously evaluated treating physiatrist Dr. Ostrowski's opinions about Plaintiff's functional limitations and ability to work as a dentist. (Plaintiff's Brief, p. 7.)

Dr. Ostrowski, a specialist in physical medicine and rehabilitation, first treated Plaintiff for neck pain in 1997. (AR. 303, 421). In 2008, Plaintiff again came under Dr. Ostrowski's care for complaints of continued neck pain (AR. 421) and low back pain (AR. 365, 367, 475). Dr. Ostrowski's records from 2008 through 2010 reflect that on examination, Plaintiff's "[c]ervical spine range of motion is very restricted for lateral bending to both sides. Cervical flexion is full and extension to 20 degrees. Lumbar spine range of motion is similarly restricted for lateral bending and extension." (AR. 365 (May 2008); *see also* AR. 599 (noting in August 2008 "Cervical spine range of motion is very restricted for bilateral lateral bending and extension."); AR. 417 (noting in July 2009 similar findings except that cervical extension is to 10 degrees and noting "moderate tenderness of the lower cervical paraspinals and entire lumbar paraspinals bilaterally."); AR. 419 (noting in February 2010 restricted cervical and lumbar spine range of motion for lateral bending); AR. 422 (noting in September 2010 restricted cervical spine range of motion for lateral bending); AR. 548

- 5 -

1  (noting same in October 2010)). In 2011, Dr. Ostrowski's examination notes continued to reflect restricted range of motion for lateral bending in the cervical and lumbar spine in addition to diffuse tenderness to palpation in the mid cervical paraspinals and mid and low lumbar paraspinals bilaterally. (AR. 466; *see also* 468).

Dr. Ostrowski opined in February 2009 and September 2010, that Plaintiff could not perform the usual demands of work as a dentist. (AR. 303, 421). Dr. Ostrowski specifically opined that Plaintiff's cervical-spine and lumbar-spine conditions prevented him from holding "prolonged static and frequently awkward positioning of the neck and the low back while performing patient evaluations and dental procedures." (AR. 303). Dr. Ostrowski went on to state that Plaintiff's "current complaints are very consistent with what I would expect given the nature of the spinal degenerative abnormalities." (AR. 303). Dr. Ostrowski's notes throughout the record are consistent with his February 2009 and September 2010 opinion. (*See* AR.366 (May 13, 2008 treatment note stating "Given the degree of spinal arthritis present, [Plaintiff] is simply going to have to avoid the extremes of motion for both the cervical and lumbar areas during his activities"); AR. 579 (stating in 2009 that "His main limitation is for lateral bending and extension of the cervical and lumbar spine. He has advanced facet joint arthritis which interferes with these positions . . . required to be a dentist"); AR. 560 (stating in March 2010 that Plaintiff is "unable to maintain positions needed to be a dentist" and that "his neck and back pain are body position specific"); AR. 563 (undated note identifying specific limitations as "lateral bending [and] extension" of the cervical and lumbar spine)).

It is well-settled that the opinions of treating physicians, like Dr. Ostrowski, are entitled to greater weight than the opinions of examining or non-examining physicians. *Andrews v. Shalala,* 53 F.3d 1035, 1040-1041 (9th Cir. 1995). Generally, more weight is given to the opinion of a treating source than the opinion of a doctor who did not treat the claimant. *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Medical opinions and conclusions of treating physicians are accorded special weight because treating physicians are in a unique

- 6 -

position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Winans*, 853 F.2d at 647; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial weight.'"); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) ("We afford greater weight to a treating physician's opinion because he is employed to cure and has a greater opportunity to know and observe the patient as an individual.")(internal quotation marks and citation omitted); 20 C.F.R § 404.1527 (generally, more weight is given to treating sources).

An ALJ may reject a treating physician's uncontradicted opinion only after giving "'clear and convincing reasons' supported by substantial evidence in the record." *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998) (*quoting Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995)). "Even if the treating doctor's [medical] opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick,* 157 F.3d at 725 (citing *Lester,* 81 F.3d. At 830)*; see also Holohan v. Massanari,* 246 F.3d 1195, 1202-1203 (9th Cir. 2001). Similarly, the ALJ may reject a treating physician's controverted opinion on the ultimate issue of disability, *i.e.,* the claimant's ability to perform work, only with specific and legitimate reasons supported by substantial evidence in the record. *Id.* (citing *Lester*, 81 F.3d at 830). "In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Id.*

"'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings.'" *Tommasetti*, 533 F.3d at 1041 (quoting *Magallanes,* 881 F.2d at 751). The Social Security Administration has explained that an ALJ's finding that a treating source medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.

- 7 -

1  2007) (citation omitted). Treating source medical opinions are still entitled to deference and,
2  "[i]n many cases, . . . will be entitled to the greatest weight and should be adopted, even if
3  it does not meet the test for controlling weight." *Orn*, 495 F.3d at 632 (citing SSR 96-2p at
4  4); *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983) ("If the ALJ wishes to
5  disregard the opinion of the treating physician, he or she must make findings setting forth
6  specific, legitimate reasons for doing so that are based on substantial evidence in the
7  record.").

8  At the outset, Plaintiff correctly points out that "the opinions of a specialist about
9  medical issues related to his or her area of specialization are given more weight than the
10 opinions of a nonspecialist." *Smolen v. Chater,* 80 F.3fd 1273, 1285 (9th Cir. 1996) (citing
11 20 C.F.R. § 404.1527(d)(5)). Defendant concedes that "the ALJ did not reference Dr.
12 Ostrowski as a specialist..." in physical and rehabilitation. (Defendant's Brief, p. 15; *see also*
13 AR. 303). According to Defendant, the fact that the ALJ acknowledged Dr. Ostrowski was
14 a treating physician was all she needed to do since she set out specific and legitimate reasons
15 to reject his opinion. Defendant cites no authority for this position. Moreover, as set forth
16 below, the ALJ failed to state specific and legitimate reasons to reject Dr. Ostrowski's
17 opinion.

18 Further, to the extent Defendant articulates now, for the first time, grounds on which
19 the ALJ could have rejected Dr. Ostrowski's opinion but did not, the Court reviews only the
20 reasons provided by the ALJ in the disability determination and may not affirm the ALJ on
21 a ground upon which he did not rely. *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir.
22 2014) (citing *Connett*, 340 F.3d at 874); *see also Bray,* 554 F.3d at 1225 ("Long-standing
23 principles of administrative law require us to review the ALJ's decision based on the
24 reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt
25 to intuit what the adjudicator may have been thinking.").

26 Here, the ALJ gave little weight to Dr. Ostrowski's narrative letters because Dr.
27 Ostrowski did not opine that Plaintiff was disabled to the extent he could not perform *any*
28 work activity. (AR. 40). The State agency reviewers the ALJ relied upon both noted that Dr.

- 8 -

Ostrowski's opinion was more restrictive than their findings, but stated that the "[s]ource opinion is an issue reserved to the Commissioner." *See* (AR. 79 (Dr. Fahlberg); *see also id.* at 95 (Dr. Kline). Defendant contends that Dr. Ostrowski's statement that Plaintiff could not perform his past work as a dentist constituted merely "Dr. Ostrowski's opinion as to whether Plaintiff was disabled" and, opinions which are vocational in nature "should not be credited because they are merely opinions on application of statute, a task assigned solely to the discretion of the Commissioner." (Defendant's Brief, pp. 14-15)(citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Contrary to Defendant's characterization, Dr. Ostrowski's opinion that Plaintiff's musculoskeletal impairments prevented him from holding "prolonged static and frequently awkward positioning of the neck and the low back while performing patient evaluations and dental procedures" ((AR. at 303; *see also id.* at 366 ("avoid the extremes of motion for both the cervical and lumbar areas during his activities")), are medical source statements from Plaintiff's treating physician reflecting his judgement about the nature and severity of Plaintiff's impairment, including physical restrictions, which are entitled to special weight and are particularly relevant to the step-four determination in this case. *See* 20 C.F.R. § 404.1527(a)(2)(defining medical source statement).[4] Under the regulations, a treating, an examining, and a non-examining physician may provide an opinion about a claimant's functional limitations, *i.e.*, a medical source statement. *See* 20 C.F.R. § 404.1527(a)(2) (2013) ("Evidence that you submit or that we obtain may contain medical opinions. Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including

---

[4] Moreover, even if Dr. Ostrowski's opinions were "vocational in nature" or he opined on the "ultimate determination of disability", an issue reserved to the Commissioner, *Magallanes,* 881 F.2d at 751; 20 C.F.R. § 404.1527(d), the fact that an expert addresses the ultimate issue should not constitute a basis for devaluing a treating doctor's opinion when the treating physician states the extent of Plaintiff's specific limitations. *See e.g. Aaron v. Astrue*, 2008 WL 4502268, *7 (E.D. Cal. October 7, 2008). In this case Dr. Ostrowski stated specific postural limitations based on objective evidence that explained and justified the limitations. Dr. Ostrowski did not depart in his opinions from his medical functions or invade the legal province of the ALJ.

- 9 -

your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *see also* SSR 96-5p (explaining a medical source statement). The absence of an opinion that Plaintiff is precluded from doing any work may well be relevant. However, as Plaintiff correctly notes, it was neither logical nor reasonable for the ALJ at step four to reject Dr. Ostrowski's specific opinions relevant to the performance of Plaintiff's past work as a dentist on the grounds that the treating physician did not opine that Plaintiff could not perform any activity at all.

In giving little weight to Dr. Ostrowski's opinion, the ALJ also additionally stated that "the State agency reviewers determined the exertional level generally performed by a dentist is light, which the claimant is not precluded from performing." (AR. 40). This analysis is unsound. The State agency reviewer's RFC assessment is not "substantial evidence" in support of the ALJ's determination. *See Lester*, 81 F.3d at 831 (9th Cir. 1995) ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."); *see also Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1202 (9th Cir. 2008); 20 C.F.R. § 404.1527(c)(weighing of medical opinions).

Finally, the ALJ stated that Dr. Ostrowski evaluated the claimant on July 28, 2009, and found "he did not wish to pursue additional medication for pain or facet joint blocks; as such, he was advised he did not need to return for follow-up until six months later."[5] (AR. 40). Defendant asserts that the ALJ noted that Dr. Ostrowski's opinions were inconsistent with Dr. Ostrowski's observation that Plaintiff did not wish to pursue additional pain

---

[5] Dr. Ostrowski's treatment note cited by the ALJ states, in pertinent part: "[Plaintiff] never did fill the pain medication prescription. In general, he does not like the idea of taking pain medication[]" (AR. 417), and "I discussed the treatment options with Roger at length. As previously discussed, he does not want to pursue any additional medications for pain. He has already participated in physical therapy services of various types without much improvement. He *may* be a candidate for lumbar and/or cervical facet joint blocks. If particular levels are implicated, then radiofrequency treatments to those levels can be pursued. After lengthy discussion at this point, he would like to watch and wait." (AR. 418) (emphasis added).

- 10 -

medication or more aggressive treatment, that Plaintiff declined aggressive treatment and reported not being interested in further treatment or assessment for back pain, and repeatedly reported not taking medication for pain regularly. (Defendant's Brief, p. 14 (citing AR. 40, 350, 356, 358-360, 366, 466, 468, 486)). Social Security regulations provide that, in order to obtain benefits, an individual must follow treatment prescribed by his or her physician if the treatment can restore the ability to work, unless the individual has an acceptable reason for failing to follow the prescribed treatment. *See* 20 C.F.R. § 404.1530. This is not, however, an appropriate standard for interpreting or rejecting Dr. Ostrowski's opinion as to Plaintiff's existing impairments. *See e.g.* 20 C.F.R. § 404.1530(c). There is no showing on this record that had Plaintiff submitted to facet joint blocks or taken pain medication, he would not be subject to the restrictions indicated by Dr. Ostrowski. For example, Plaintiff was prescribed Percocet, which he did take, although sparingly, because he was fearful the medication would lose its effectiveness. (*See* AR. 358-59.) Plaintiff testified that he did not take OxyContin because it didn't "touch [his] head, doesn't touch the pain" which is "pretty much constant." (AR. 59). Plaintiff did not take any non-steroidal anti-inflammatories like ibuprofen and Aleve because they increase his risk for another stroke or another heart attack. (AR. 60; *see* AR. 476 (Plaintiff has a history of myocardial infarction and stent placement); AR. 39 (ALJ noting Plaintiff's history of coronary artery disease with stent)). Plaintiff took Ultram. (AR. 360, 601). Furthermore, the ALJ acknowledged that Plaintiff also underwent physical therapy, acupuncture, therapeutic massage, pain injections, purchased a back brace, and was prescribed medical marijuana by his primary care physician, Dr. Wool, for treatment of pain. (AR. 36, 39; *see also* AR. 603 (physical therapy treatment note indicating Plaintiff "has not responded well to PT. He does obtain good relief from lumbar tension but the relief is only temporary. He did not obtain any relief with other manual cervical traction or with manual therapy techniques."); AR. 61 (Plaintiff's testimony that the treatments he attempted, including epidurals and acupuncture did not work)). The ALJ also acknowledged that in 2008, orthopedic surgeons Wu and Wisneski determined Plaintiff was not a candidate for surgery. (AR. 38). Further, as to facet joint blocks and facet joint rhizotomy, which were

1  discussed as treatment options, Dr. Ostrowski opined that "there's no real guarantee of
2  sustained improvement with these treatments" (AR. 359) and "even if there is improvement,
3  the pain may return and require additional treatments". (AR. 361).
4        For the foregoing reasons, the ALJ failed to set out specific and legitimate reasons
5  supported by substantial evidence to reject Dr. Ostrowski's opinion.  Plaintiff requests that
6  the Court remand the matter for further proceedings to properly evaluate Dr. Ostrowski's
7  opinion. (Plaintiff's Brief, p. 15; Reply, p.11). The Court agrees that remand is in order for
8  this reason.  Moreover, because the ALJ's failure to properly assess Dr. Ostrowski's opinion
9  impacts the RFC assessment which, in turn, impacts the ALJ's determination at step-four that
10 Plaintiff can perform his past relevant work, the Court does not address Plaintiff's argument
11 that substantial evidence does not support the ALJ's step four assessment that Plaintiff can
12 work as a dentist.
13 **CREDIBILITY.**
14       Plaintiff also challenges the ALJ's finding that he was not fully credible.  It is also
15 likely that reassessment of Dr. Ostrowski's opinion will impact the ALJ's existing credibility
16 finding.
17       Plaintiff testified that he stopped working as a dentist because of "the discomfort in
18 my neck in particular at the time because of leaning over and twisting was just, I just couldn't
19 take it anymore." (AR. 53).  Plaintiff testified that "from my perspective,...I have an issue
20 with my body that I can't hold a static position for very long,....But any position that I hold
21 for a period of time becomes very problematic for me after the fact." (AR. 60-61).  Plaintiff
22 testified that he does exercises every morning using the Egoscue protocol, which he
23 described as similar to physical therapy exercises. (AR. 61-62 (the Egoscue protocol "aren't
24 things that make you sweat.").  Plaintiff testified he can walk up to six miles and that
25 "[m]ovement helps me usually." (AR. 57). He also testified that he could not perform
26 sedentary work because he cannot sit for a long period of time. (AR. 54, 58-59).  According
27 to Plaintiff, treatments he has tried, including epidurals and acupuncture have not worked.
28 (AR. 61).  He drinks one to two shots of alcohol per day for pain and, with that, his pain level

1    falls somewhere between a seven and a nine.  (AR. 60).  Plaintiff testified that depression
2    was "not an issue anymore for me." (AR. 54).

3    In discounting Plaintiff's testimony, the ALJ cited Plaintiff's ability to care for his
4    personal needs, watch television, use the computer, read the newspaper, walk, visit with
5    friends, perform light domestic cleaning (including laundry, sweeping, and vacuuming),
6    manage money, swim, go to the gym[6], and go on a two-week vacation to Thailand. (AR, 37).
7    According to the ALJ, "[s]ome of the physical and mental abilities and social interactions
8    required in order to perform these activities are the same as those necessary for obtaining and
9    maintaining employment.  The claimant's ability to participate in such activities undermined
10   the credibility of his allegations of disabling functional limitations." (AR. 37).

11   Plaintiff argues that the issue is whether his statements "about his ability to perform
12   dental procedures requiring prolonged static and frequent awkward positions were credible.
13   The ALJ neither showed nor even alleged that any of the activities in which Anderson
14   engaged undercut his statements about his ability to perform dental procedures in a full-time
15   dental practice." (Plaintiff's Brief, p. 18) (emphasis omitted).

16   On remand, the ALJ should revisit the credibility determination in light of
17   reassessment of Dr. Ostrowski's opinion.

18   **LAY WITNESS TESTIMONY**

19   Plaintiff challenges the ALJ's finding that the lay witness testimony was credible only
20   to the extent it was consistent with the RFC assessment.

21   Patricia Rose, Plaintiff's wife, testified that since she met Plaintiff in December 2009,
22   his physical condition has deteriorated and he is "in pain all the time." (AR. 63). Ms. Rose
23   assists Plaintiff with picking things up, getting him out of chairs, tying his shoes, and daily
24   activities such as picking up heavy grocery bags, and doing dishes at the sink. (AR. 63).  Ms.
25   Rose also completed a Third Party Adult Function Report. (AR. 170-77).

---

[6]Plaintiff indicated that he swam and went to the gym "1-2 [sic] month." (AR. 183). He also indicated that he swam using a snorkel (*id.*), and no testimony was elicited about what he did at the gym.

- 13 -

1  Charles Greenberg, Plaintiff's friend, testified that he has known Plaintiff for 20 years,
2 and that Plaintiff has complained about discomfort and pain for 15 or 18 years. (AR. 64-65).
3 Mr. Greenberg testified that three to five years ago Plaintiff told him he had to sell his
4 business because "his mind isn't there anymore because [he's] hurting so much." (AR. 65).
5 Over the last couple of years it has "noticeably gotten worse." (AR. 65). Plaintiff "can't sit
6 in a movie. We'd go see a show sometimes and he'd sit there for an hour and he's up walking
7 around and he's back or we'd go for a drive somewhere just to do something and he said stop
8 …. He says I got to move." (AR. 65). Mr. Greenberg testified that Plaintiff could go for three
9 or four hours, or "a whole day and he could be okay. And, then you could have the next day
10 and he barely can, he has trouble getting out of bed." (AR. 65-66). Plaintiff calls Mr.
11 Greenberg to help with moving and lifting things. (AR. 66).

12 "Lay testimony as to a claimant's symptoms or how an impairment affects the
13 claimant's ability to work is competent evidence that the ALJ must take into account."
14 *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d
15 1462, 1467 (9th Cir.1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)). Further,
16 "competent lay witness testimony 'cannot be disregarded without comment,' *Nguyen*, 100
17 F.3d at 1467, and...in order to discount competent lay witness testimony, the ALJ 'must give
18 reasons that are germane to each witness,' *Dodrill*, 12 F.3d at 919." *Molina,* 674 F.3d at
19 1114.

20 The ALJ found Ms. Rose partially credible. (AR. 37). The ALJ pointed out that Ms.
21 Rose's statements on the Third Party Function Report were not under oath. However, the
22 form, which is provided by the Social Security Administration, does not require that the
23 statements be made under oath. Moreover, Ms. Rose testified before the ALJ and, thus, the
24 ALJ had every opportunity to clarify Ms. Rose's statements made in the report. The ALJ
25 also pointed out that Ms Rose acknowledged that Plaintiff could lift up to twenty pounds,
26 walk the dog, play games on the computer, watch television, help with shopping, and help
27 with light household activities. (AR. 37).

28  The ALJ also discounted the lay witness testimony because "the opinion of a

- 14 -

1 layperson is far less persuasive on those same issues than are the opinions of medical
2 professionals as relied on herein. In addition, [Ms. Rose]...was not an unbiased one because
3 she has a financial motivation to support the claimant as well as a financial interest in seeing
4 the claimant receive benefits. More importantly, the statements of [Ms. Rose and Mr.
5 Greenberg]...are not supported by the clinical or diagnostic medical evidence discussed
6 elsewhere in this decision." (AR. 37-38). Therefore, the ALJ found Ms. Rose's and Mr.
7 Greenberg's statements credible only to the extent they are consistent with the RFC
8 assessment. (AR. 38).

9 Lay witness testimony cannot be discredited due to lack of medical or vocational
10 expertise. *See Bruce v. Astrue,* 557 F.3d 1113, 1116 (9th Cir. 2009). Nor can the ALJ reject
11 lay witness testimony based solely on presumed familial bias. *See Smolen,* 80 F.3d at 1289;
12 *Greger v. Barnhart*, 464 F.3d 968 (9th Cir.2006). Defendant posits that the ALJ may reject
13 lay testimony, "in part", because it is not supported by medical evidence. (Defendant's Brief,
14 p. 22). Plaintiff contends that the Ninth Circuit prohibits "discredit[ing] [lay]...testimony on
15 the basis of its relevance or irrelevance to medical conclusions." *Bruce,* 557 F.3d at 1116
16 (citing 20 C.F.R. § 404.1513(d) (providing that lay witness testimony may be introduced "to
17 show the severity of [the claimant's] impairment(s) and how it affects [his] ability to work")
18 (other citations omitted). On this record, the only remaining reason to discount the lay
19 testimony would be because it was not supported by the medical evidence and Defendant
20 concedes that lay testimony cannot be rejected solely because it is unsupported by the
21 medical evidence. (*See* Defendant's Brief, p. 22). On remand, the ALJ shall reassess the
22 lay witness testimony.

23 **CONCLUSION**

24 This case was decided at step four. Dr. Ostrowski's opinion is exclusively related to
25 step four. Dr. Kurtin's and Dr. Fahlberg's opinions that Plaintiff has the capacity to perform
26 a wide-range of light work does not directly contradict Dr. Ostrowski. To this Court, the
27 focus on remand should be on step five. A "reassessment" of the specialist's opinion at step
28 four will be unproductive without substantial new medical expert testimony. Whether the

1  Plaintiff can perform other light is the issue this case presents.

2      For the foregoing reasons, this matter is remanded for further proceedings to reassess
3  treating Dr. Ostrowski's February 2009 and September 2010 opinions, Plaintiff's credibility
4  and the lay witness testimony. Such reconsideration may require testimony from a vocational
5  expert as well. Accordingly,

6      IT IS ORDERED that this matter is REMANDED for further proceedings consistent
7  with this Order.

8      The Clerk of Court is DIRECTED to enter judgment and close this case.

9      DATED this 30th day of September, 2014.

*[signature]*

**CHARLES R. PYLE**
**UNITED STATES MAGISTRATE JUDGE**